UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CRAIG WATERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:22-cv-00541-MJD-JMS |
| | ) |
| CHIEF SHAWN KEEN, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Motion for Summary Judgment. [Dkt. 47.] For the reasons set forth below, the motion is **GRANTED**.

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the nonmoving party, and draw all reasonable inferences in his favor." *Pack v. Middlebury Cmty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021) (citing *McAllister v. Innovation Ventures*, 983 F.3d 963, 967 (7th Cir. 2020)).

> Summary judgment is a critical moment for a non-moving party. It must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by speculation or conjecture will not suffice. *Skiba v.*

*Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018). Neither will the mere scintilla of evidence. *Grant*, 870 F.3d at 571.

*Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, "as it is not the court's job to 'scour the record in search of evidence to defeat a motion for summary judgment.'" *Hildreth v. Butler*, 960 F.3d 420, 429 (7th Cir. 2020) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)).

## II. Background Facts of Record

The evidence of record, viewed in the light most favorable to Plaintiff Craig Waterman, supports the following facts. Additional facts are discussed, as relevant, in the Discussion section below.

On October 26, 2020, at approximately 11:24 pm,[1] Chelsea Riddle called 911 and reported that Craig Waterman had shoved her when she had gone to her sister Bethany Stines' home to pick her up. [Dkt. 52-1.] Riddle reported that she was waiting outside the house in her truck and believed that a battery was in progress inside the house. *Id.* Riddle further reported that a four year old child was in the house. *Id.*

Four officers from the Terre Haute Police Department responded to the call, including Defendants Justin Sears, Alan James, and Christopher Jones. *Id.* Officer James, who was the

---

[1] In his Statement of Material Facts in Dispute, Waterman states that the call occurred at approximately 11:27 pm. [Dkt. 53 at 1.] The 911 call report, to which Waterman cites, states that it occurred at 11:24 pm. [Dkt. 52-1.] This is not a material misrepresentation of the record—it does not really matter exactly what time the call was made—but more precision in factual recitations would certainly be preferable. Waterman also states that Riddle "stated . . . that Craig Waterman had choked and punched her sister," again citing the same document. [Dkt. 61 at 1.] That document does not contain that statement.

2

first to arrive on the scene, arrived approximately six minutes after the 911 call was made. *Id.*[2]

There is conflicting testimony about the status of the scene when Officer James first arrived, but the conflicts are immaterial to the issues addressed in this ruling.[3] Suffice it to say that the officers determined that Waterman was likely in the basement of the home and that they eventually used a K-9 officer to apprehend Waterman. At the direction of an officer, the dog bit Waterman on the arm and held on. [Dkt. 52-4 at 7.] While Waterman was lying on the basement floor with the dog biting his arm, one of the officers struck Waterman in the face. [Dkt. 52-3 at 71.] Officers called for medical assistance for Waterman at 11:43 pm and Waterman, who resisted being brought upstairs by the officers, was taken outside to a waiting ambulance. [Dkt. 52-8 at 38-39.][4]

---

[2] Defendants incorrectly state that "[t]he Officers" arrived at the scene within six minutes. [Dkt. 49 at 2.] In fact, only Officer James did; the other officers arrived a few minutes later. [Dkt. 52-1.] Again, this is not a material misrepresentation of the record, but more precision in factual recitations would certainly be preferable.

[3] Officer James testified that Stines was inside the house when he arrived and that she came running to the front of the house and said, "He's going to kill somebody." [Dkt. 48-6 at 2.] Officer James testified that he had Bethany get her four-year-old child out of the house while he "maintained control on the back of the house where [he] had heard noises coming from," which he believed to be Waterman. *Id.* Stines testified that the officers "made [her] go out on the porch" when they arrived and that they did not tell her to "go wake [her] children up and bring them out on the porch" until after they had apprehended Waterman. [Dkt. 72-5 at 2.] She further testified that, in response to questioning by the officers, she told them that Waterman was "black out drunk" and had "probably went down [to the basement] and just passed out," that he "absolutely" did not have a weapon, and that there was only one way out of the basement. *Id.* at 4. Elsewhere in her deposition, Stines testified that she told the officers that she was "pretty sure" that Waterman did not have a weapon. *Id.* at 28. Riddle, on the other hand, testified that by the time the police arrived she, Stines, the four-year-old, and Stines' newborn baby were all in Riddle's vehicle in the driveway. [Dkt. 69-2 at 4.]

[4] Waterman's Statement of Material Facts in Dispute contains the statement: "While being examined Officer James continued to hold Craig. [Filing 52-8 at 39]." [Dkt. 53 at 3.] The cited evidence—an excerpt from Riddle's deposition—does not support that statement; it only addresses the use of force while Waterman was being taken to the ambulance, not while medics were examining him.

3

### III. Discussion

Waterman asserts claims against Defendants Sears, James, and Jones pursuant to 42 U.S.C. § 1983 for excessive force and failure to protect from excessive force, as well as state law claims for battery and criminal confinement. [Dkt. 1-1 at 12.] He also asserts a *Monell* claim against Chief of Police Shawn Keen and the other Defendants in their official capacities. *Id.* at 17. In response to the instant motion for summary judgment, Waterman concedes he cannot succeed on the *Monell* claim or his state law claim for criminal confinement and that summary judgment in favor of Defendants on those claims is appropriate. [Dkt. 61 at 18.] With regard to the remaining claims, Defendants argue that they are entitled to summary judgment because the date this case was filed, October 27, 2022, was one day after the statute of limitations for those claims expired. For the reasons set forth below, the Court agrees.

### A. Applicable Statute of Limitations

There is no dispute that the applicable statute of limitations for the remaining claims in this case is Indiana's two-year statute of limitations for personal injury claims. *See Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013) (noting that "[i]n Indiana, [§ 1983] claims must be brought within two years"); *Shawa v. Gillette*, 209 N.E.3d 1196, 1199 (Ind. Ct. App. 2023) ("In Indiana, the statute of limitations for battery is two years from the date on which the claim arose." (citing Ind. Code § 34-11-2-4). The statute provides that an action for personal injury "must be commenced withing two (2) years after the cause of action accrues." Ind. Code § 34-11-2-4(a)(1).

> While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action. For § 1983 purposes, a claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated. To determine when the claim accrues, a court must first

identify the plaintiff's injury and then determine when the plaintiff could have sued for that injury.

*Logan v. Wilkins*, 644 F.3d 577, 581-82 (7th Cir. 2011) (citations and quotation marks omitted). Similarly, under Indiana law, "'a cause of action accrues, and the statute of limitations begins to run, when a claimant knows or in exercise of ordinary diligence should have known of the injury.'"  *Bernstein v. Bankert*, 733 F.3d 190, 218 (7th Cir. 2013) (quoting *Pflanz v. Foster*, 888 N.E.2d 756, 758 (Ind. 2008)).

### B.  Waterman's Injuries Occurred on October 26, 2020

The constitutional violation alleged in this case is excessive force.  The acts of excessive force alleged by Waterman are described in his brief as follows:  "Sergeant Sears proceeded to order the K-9 Ossy to administer a bite and hold, then one of the officers struck him while the K-9 was biting him."  [Dkt. 61 at 13.]  This is consistent with Waterman's Complaint, in which he asserts that "the officers applied greater force than was necessary by releasing a canine unit to effectuate the arrest of Mr. Waterman" and "[t]he officers also applied greater force than was necessary by applying other physical force against Mr. Waterman, including body-weight techniques and closed fist punches to Mr. Waterman's head," [Dkt. 1-1 at 13], which Waterman alleges occurred while he was in the basement and before he was placed in handcuffs.  *Id.* at 10.  The relevant date for statute of limitations purposes is, therefore, the date on which the dog bite and the alleged punches, etc., occurred.  As set forth below, the evidence of record establishes that that date is October 26, 2020.

First, the 911 log that recorded the time of all radio communication from the officers on the scene shows that the dog bite had occurred by 23:43:51 on October 26th, which is when the notation "need medics, K9 apprehantion [sic]" was made.  [Dkt. 52-1.]  In turn, the Terre Haute

Fire Department Patient Care Record shows that the Fire Department received a call that medical assistance was needed at 23:43:59 and arrived at the scene on 23:54:24. [Dkt. 70-5 at 3.] Waterman was assessed by medical personnel at 23:55 and his vital signs were recorded at 23:58. *Id.* The ambulance left for the hospital at 00:05:59 on October 27, 2020, *id.*, and the hospital records show that Waterman arrived at 00:16 and was seen by a physician at 00:20. [Dkt. 70-2 at 6, 7.] The only reasonable conclusion that can be drawn from this evidence is that the acts of excessive force alleged by Waterman occurred on October 26, 2020.

### C. Waterman's Arguments

Waterman makes several arguments why his Complaint was timely filed. Each of those arguments is addressed, in turn, below.

#### 1. When the "Incident" Occurred

First, Waterman's brief in response to the instant motion contains the following paragraph:

> In addition, several statements have been made by the Defendants, their agent, and their principal, that the alleged criminal acts occurred on October 27, 2020, including within the police report, the probable cause affidavit, the charging information, and the insurance agent's response to the tort claims notice. These statements, at the very least, present a genuine issue of material fact as to what date the incident occurred, precluding summary judgment.

[Dkt. 61 at 8] (citing [Dkt. 70-1 at 12]; [Dkt. 70-3 at 1]; [Dkt. 70-4 at 1]; [Dkt. 52-15 at 1]). Elsewhere in his brief, however, Waterman concedes that the alleged acts of excessive force occurred on October 26th. In his Statement of Material Facts in Dispute, Waterman states:

> Once K-9 Ossy bit Craig's arm, Officer James jumped on his back, gained control of Craig's right arm, and handcuffed him. [Filing 52-4 at 37]. Officers Sears then called to report that Craig had been apprehended at 11:44:50 PM, but was still in the basement. [Filing 52-6 at 51-52; Filing 52-1 at 1]. The encounter was continuing. [Filing 52-7 at 31-32]. Craig was then brought up from the basement by the officers. [Filing 52-7 at 22; Filing 52-4 at 38].

[Dkt. 61 at 2.] Elsewhere in his brief, Waterman concedes that he was "bit and struck on October 26, 2020, sometime prior to the report that he's been apprehended at 11:44:58. [Filing 52-6 at 51-52; Filing 52-1 at 1]." *Id.* at 9. Given these concessions, and the evidence set forth above, no reasonable factfinder could conclude that the alleged acts of excessive force—that is, the dog bite and the alleged subsequent punches, etc.—actually occurred on October 27, 2020.

The main thrust of Waterman's argument is that his "cause of action accrued on October 27, 2020[,] as the **incident** occurred, at least in part, on that date." [Dkt. 61 at 6] (emphasis added). His argument is as follows:

> In this case, Craig Waterman had passed out from intoxication in his basement prior to the police arriving. [Filing 52-2 at 30; Filing 52-3 at 61-67]. He was awoken by the dog biting him and then shortly thereafter lost consciousness again when he was struck by one of the officers. [Filing 52-3 at 81]. He was then placed in handcuffs and reported as being apprehended while still in the basement at 11:44:58. [Filing 52-6 at 51-52; Filing 52-1 at 1]. He then had to be dragged up the stairs by the officers before being placed in an ambulance. [Filing 52-7 at 22; Filing 52-4 at 38]. While being drug [sic] to the ambulance, he stated "that didn't hurt." [Filing 52-3 at 54]. He then awoke within the ambulance. [Filing 52-3 at 82]. The ambulance did not leave the scene until 12:05:59 on October 27, 2020. [Filing 70-5 at 3]. As a result, he likely did not realize he had been injured until the moment he awoke in the ambulance, which it is reasonable to infer, may have very well been after midnight had passed and October 27, 2020[,] had begun. [Filing 52-7 at 32-33]. The incident, therefore, was not over until October 27, 2020, and Craig likely did not realize his injury until October 27, 2020. As a result, his cause of action did not accrue until that time, resulting in his filing on October 27, 2022 being timely.

[Dkt. 61 at 7-8.] Waterman's argument appears to be two-fold. First, he argues that he "likely did not realize he had been injured until" he awoke in the ambulance, which "may have very well been after midnight." *Id.* But that belies his own testimony, in which he states unequivocally that he remembers "being awoke [sic] facedown at the foot of the stairs in the basement with the dog biting me," [Dkt. 52-3 at 4], which he describes as "pretty alarming," *id.* at 10. He further

7

describes the dog as having "a tight grip on my arm, it's teeth are sunk in well, and it's jerking me around." *Id.* at 13.  There is no question, then, that Waterman was aware of the dog bite at the moment it occurred.  He then testified unequivocally that he was struck by one of the officers on the head at least twice while he was on the basement floor.  *Id.* at 14.  Again, there is no question that Waterman was aware of those blows at the time that they occurred.  To the extent that those actions constituted constitutional violations, they were complete and Waterman was aware of them when they occurred on October 26, 2020.  See *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019) ("A claim accrues when the constitutional violation is complete and the plaintiff has a present cause of action.  In other words, a cause of action accrues, and the statute of limitation commences to run, when the wrongful act or omission results in damages.") (citations and quotation marks omitted); *see also Olrich v. Kenosha Cnty.*, 825 F. App'x 397, 399 (7th Cir. 2020) ("The discovery rule applies when a plaintiff does not learn of an injury and who caused it until after its occurrence.  Olrich, however, was present at his arrests and detention.  Nothing prevented him from appreciating any alleged violations that occurred.") (citations omitted).  It does not matter if Waterman was not aware of the extent of his injuries until later, because "'[t]he cause of action accrues even though the full extent of the injury is not then known or predictable.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Wallace v. Kato,* 549 U.S. 384, 391 (2007)).

The second facet to Waterman's argument appears to be that what is relevant is not when the dog bite and punches, etc., occurred, but when the "incident" as a whole occurred.  Because, he argues, the "incident" continued past midnight, the statute of limitations did not begin to run until October 27th.  Neither of the cases cited by Waterman on this point—*Haywood v. Maue,* 829 F. App'x 727, 728 (7th Cir. 2020), and *Gould v. Clark*, 2020 WL 6263035, at *1 (N.D. Ind.

8

Oct. 23, 2020)—remotely supports Waterman's argument that the relevant "incident" in this case continued after he was placed under arrest in the basement. Indeed, *Gould* cites to *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012), for the proposition that an "excessive force claim accrues when the excessive force is used."[5] Again, the alleged acts of force are the dog bite and "other physical force . . . including body-weight techniques and closed fist punches to Mr. Waterman's head," [Dkt. 1-1 at 13], that occurred in the basement. Those incidents occurred on October 26, 2020.

    2.  The Continuing Wrong Doctrine

Next, Waterman argues that the continuing wrong doctrine[6] applies to this case and that his "cause of action accrued on October 27, 2020[,] because the wrong committed by the Defendants continued into the early morning of October 27, 2020." [Dkt. 61 at 8.] His argument again appears to be two-fold. First, he asserts that

> Plaintiff is bit and struck on October 26, 2020, sometime prior to the report that he's been apprehended at 11:44:58. [Filing 52-6 at 51-52; Filing 52-1 at 1]. The Defendant's [sic.], however, continued to use force against him in removing him from the basement and getting him into the ambulance. [Filing 52-8 at 38; Filing 52-8 at 39]. A reasonable jury could determine that the force used on an already subdued suspect was excessive.

---

[5] The word "incident" does not appear in *Gould*. *Haywood* does state that "the date of discovery of an injury is irrelevant to accrual because excessive-force claims are 'immediately' actionable from the date of the incident." *Haywood*, 829 F. App'x at 728. However, *Haywood* simply uses the word "incident" to describe the alleged act of excessive force. That case in no way involves the distinction between the alleged act of excessive force and some larger "incident."

[6] Under that doctrine, "where the violation at issue can be characterized as a continuing wrong, the limitations period begins to run *not* when an action on the violation could first be brought, but when the course of illegal conduct is complete." *United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350 (7th Cir. 2019) (emphasis in original); *see also Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 463 (7th Cir. 2018) ("[U]nder Indiana's continuing-wrong doctrine, when a wrong occurs outside the limitations period and closely related wrongs occur within the limitations period, the plaintiff can recover for all wrongs." (citing *Marion County v. Indiana*, 888 N.E.2d 292, 299 (Ind. Ct. App. 2008)).

*Id.* at 9. Thus, he argues, excessive force could have been used against him on October 26th and continuing into October 27th. However, Waterman points to no evidence in the record that would support such a finding. The only evidence Waterman cites to consists of two pages from the deposition of Riddle. Her testimony is as follows:

> Q: Earlier you said he was—as they were bringing him out of the basement, they were continuing to tell him to stop resisting, is that correct?
>
> A: Uh-huh, (NODS HEAD AFFIRMATIVELY)
>
> Q: So at that point he was still resisting?
>
> A: Yes.
>
> Q: Okay. Did they continue to need to use force?
>
> A: No, they were very careful because he was injured.
>
> Q: How was he resisting?
>
> A: Fighting back because he's belligerent.
>
> Q: Okay. Did they have to—
>
> A: I mean, they restrained him the best they could without hurting him because his arm was tore up.
>
> Q: They had to continue to physically restrain him?
>
> A: I wouldn't say physically—I mean, yes, but not with excessive force or not with anything like that. They were just trying to get him to where they could get—you can't really cuff somebody when they're injured.
>
> Q: Where did they continue to have to use physical force?
>
> A: On his upper arm just trying to hold him.
>
> Q: Did they continue to have to use physical force?
>
> A: No.

> Q: You just said he's resisting.
>
> A: Uh-huh, but he's also injured, so they're not unintelligent.  They know what they can and can't do.
>
> Q: I understand that.  Were they physically touching Craig Waterman?
>
> A: Yes, they were.  That's their job.
>
> Q: Okay.  I don't need you to tell me.
>
> A: Well, I don't need your hostility either, so . . .
>
> Q: I'm not being hostile.
>
> A: Okay.
>
> Q: I'm asking you very simple questions.
>
> A: All righty.  I'm giving you answers.
>
> Q: Were they applying physical force to him after he exited the home?  Whether it is excessive in your mind does not matter.
>
> A: Okay.  Yep.
>
> Q: Okay.
>
> A: They were escorting him to go get into the ambulance.

[Dkt. 52-8 at 4-5.] No reasonable factfinder could conclude from this testimony that Waterman was subjected to excessive force while he was being taken from the basement to the ambulance. In any event, the records show that Waterman was in the hands of the ambulance personnel by 11:55 p.m. on October 26, 2020.  [Dkt. 70-5 at 3] (noting that Waterman was assessed by medical personnel at 23:55 and his vital signs were recorded at 23:58).

Second, Waterman cites to *Montanez v. Town of Highland*, 2020 WL 6728961, at *3 (N.D. Ind. Nov. 13, 2020),[7] in which the court stated that the plaintiff alleged that "his arrest, transport, and booking occurred during the late evening to early morning of May 8 to 9, 2017," and that "[t]o bring a § 1983 claim or the state law claims against [the defendants], the Plaintiff was required to file his complaint against [the defendant] within two years of his injury, which was May 9, 2019." Waterman then argues:

> As in *Montanez*, Plaintiff's "arrest, transport, and booking" spanned from October 26, 2020[,] into the early morning of October 27, 2020. As a result, the continuing wrong doctrine is applicable and Plaintiff's cause of action accrued on October 27, 2020, making his filing of the Complaint on October 27, 2022[,] timely.

[Dkt. 61 at 9.] But *Montanez* is readily distinguishable from this case on its facts. In *Montanez*, which was decided on a motion to dismiss, the plaintiff expressly alleged that the alleged acts of excessive force "occurred while arresting, transporting, and booking the Plaintiff." *Montanez v. Town of Highland*, 2020 WL 6728961, at *1. Other than the unsupported allegation made in his brief and discussed above, no such allegation has been made in this case, and, again, Waterman points to no evidence that any excessive force was used after he was apprehended in the basement, which occurred on October 26, 2020.

3. *Equitable Estoppel*

Finally, Waterman argues that the doctrine of equitable estoppel bars Defendants from enforcing the statute of limitations defense in this case.

> [T]he equitable-estoppel doctrine . . . prevents defendants from asserting a limitations defense if they "took active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Vergara v. City of Chicago*, 939 F.3d 882, 886 (7th Cir. 2019)

---

[7] The Court notes that Waterman fails to provide the citation for this case, but rather gives only the name. The Court was nonetheless able to locate the case.

>  (quoting *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 721 (7th Cir. 2004)). To apply equitable estoppel, the "plaintiff's reliance on a defendant's conduct [must] be 'both actual and reasonable.'" *Franklin v. Warmington*, 709 F. App'x 373, 374-75 (7th Cir. 2017) (quoting *Rager v. Dade Behring, Inc.*, 210 F.3d 776, 779 (7th Cir. 2000)).

*Uebelacker v. Rock Energy Coop.*, 54 F.4th 1008, 1011 (7th Cir. 2022).

Waterman's estoppel argument is based on his assertion that "Defendants in this case have made several statements that the underlying criminal acts allegedly committed by the Plaintiff occurred on October 27, 2020, which would mean the acts of the officers Plaintiff alleged constitute excessive force also occurred on October 27, 2020." [Dkt. 61 at 12.] Waterman cites four documents in support of this statement. Two of those documents actually say that the events in question occurred "on **or about** the 27th day of October, 2020." *See* Dkt. 70-3 at 1 (probable cause affidavit); Filing 70-4 at 1 (criminal Information). The third document is part of the Incident Report. While the page cited to, [Dkt. 70-1 at 12], does state that that officers were dispatched "[o]n the above date and time," which presumably refers to the date at the top of the page, October 27, 2020, numerous other parts of the Incident Report contain the correct date, October 26, 2020. *See* [Dkt. 70-1 at 1 (four times); *id.* at 3; *id.* at 4)].[8] In his Statement of Material Facts in Dispute, Waterman also cites to a tort claim notice, [Dkt. 52-14], which was written by Waterman's counsel and which states that the incident occurred "[o]n or about October 27, 2020," and the insurer's response thereto, [Dkt. 52-15], which refers to the "October 27, 2020[,] incident."

---

[8] Waterman also cites to "Filing 52-6 at 42," which is found at [Dkt. 52-6 at 4.] That document is a page of Defendant Sears' deposition; it does not contain any dates.

Even assuming that Waterman could reasonably have relied on the cited documents in determining that the acts of excessive force occurred on October 27, 2020, and that such reliance could support the application of equitable estoppel, Waterman's argument still fails, because there is no evidence that Waterman actually relied on any of these documents in any way. The evidence cited by Waterman for the statement "Plaintiff relied on the statements in developing his belief of when the incident occurred" is "Filing 52-3 at 105." That refers to a page of Waterman's deposition transcript on which Waterman's attention was directed to the appearance of October 27th on the probable cause affidavit and the Information and was asked the following question: "[W]ould either of those documents have influenced when you believe this incident occurred?" [Dkt. 52-3 at 23.] When Waterman answered in the affirmative, the following exchange occurred:

> Q: You've seen those documents prior to today; correct?
>
> A: Yes.
>
> Q: I'm assuming in connection with the criminal case that proceeded after this incident?
>
> A: Yes.

*Id.* These three questions, which were either extremely artfully worded, or extremely poorly worded, by Waterman's own counsel, simply do not support a finding that Waterman **actually read** the documents in question and **relied on the dates therein** in any way. Accordingly, Waterman points to no evidence of record that would support the application of equitable estoppel in this case.

## IV. Conclusion

Waterman concedes that summary judgment is appropriate as to his *Monell* claims and his claim for criminal confinement. [Dkt. 61 at 18.] For the reasons set forth below, the Court finds that summary judgment is appropriate as to Waterman's remaining claims because they were filed after the expiration of the statute of limitations.[9] Accordingly, Defendants' motion for summary judgment, [Dkt. 47], is **GRANTED** in its entirety.

SO ORDERED:

Dated: 21 MAY 2024

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

[9] In light of this finding, the Court need not, and does not, address the parties' arguments regarding the merits of Waterman's claims or the Defendants' qualified immunity defense.